JS-6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.** SACV 23-00540-MWF (DFMx)        **Date:** January 27, 2025
Title:    Student, F.C. v. Irvine Unified School District

Present:  The Honorable MICHAEL W. FITZGERALD, U.S. District Judge

Deputy Clerk:                          Court Reporter:
Rita Sanchez                           Not Reported

Attorneys Present for Plaintiff:       Attorneys Present for Defendant:
None Present                           None Present

**Proceedings (In Chambers):**   ORDER ON ALJ DECISION AND FINDINGS OF
                                 FACT AND CONCLUSIONS OF LAW; ENTRY OF
                                 JUDGMENT

Before the Court is the trial in this action filed by Plaintiffs Student F.C. ("Student") and his parents ("Parents") (collectively, "Plaintiffs"), which functions as an appeal from the administrative decision of the Office of Administrative Hearings ("OAH"), pursuant to the Individuals with Disabilities Education Act ("IDEA"). Plaintiffs filed their Opening Trial Brief on May 9, 2024 (the "POB"). (Docket No. 39). Defendant Irvine Unified School District ("District") filed its Responsive Trial Brief on August 2, 2024 ("DRB"). (Docket No. 53). Plaintiffs filed a Reply Trial Brief on September 6, 2024 ("PRB"). (Docket No. 56).

The Court has read and considered the papers on the Motions and held a hearing on **November 18, 2024**.

For the reasons set forth below, the ALJ's Decision is **AFFIRMED**.

This action in federal court is, functionally, an appeal of the ALJ's decision. Nominally, it is sometimes viewed as a trial based on the administrative record. *Compare Ojai Unified Sch. Dist. v. Jackson*, 4 F.3d 1467, 1472 (9th Cir. 1993) (review of IDEA claims is "essentially . . . a bench trial based on the stipulated record"), *with Capistrano Unified Sch. Dist. v. Wartenberg*, 59 F.3d 884, 892 (9th Cir. 1995) (review is "in substance an appeal from an administrative determination"). If so deemed, the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.  SACV 23-00540-MWF (DFMx)          Date:  January 27, 2025**
Title:       Student, F.C. v. Irvine Unified School District

following constitutes the Court's Findings of Fact and Conclusions of Law.  Fed. R.
Civ. P. 52(a).

# I.     <u>BACKGROUND</u>

Student is a seventeen-year-old boy diagnosed with multiple disabilities, who
currently attends an online private school.  (Complaint (Docket No. 1) ¶5).  In 2014,
when Student was in the third grade, he was diagnosed with Attention-
Deficit/Hyperactivity Disorder ("ADHD").  (*Id.* ¶ 7).  In 2019, when Student was in
the eighth grade, he began experiencing extended periods of disabling illness.  (*Id.*)
Student was subsequently diagnosed with a rare medical condition called Kleine-Levin
Syndrome ("KLS") in May 2021 by Dr. Phillip O'Carroll, the Director of Neurology at
the Hoag Neuroscience Institute.  (*Id.* ¶ 8).

KLS is characterized by recurrent bouts of excessive sleep along with cognitive
and behavioral changes.  (*Id.*).  Affected individuals can sleep for over 20 hours a day
during an episode, with additional symptoms including altered behavior, cognitive
impairment, memory loss, confusion, and increased feelings of irritability and
depression.  (POB at 7).  KLS episodes are cyclical, with each episode lasting days,
weeks, or months, during which time all normal daily activities stop.  (Complaint ¶ 8).
In between episodes, however, individuals with KLS can often appear to be in perfect
health despite their impaired behavioral, physical, and/or cognitive function.  (*Id.*).

Student first began experiencing symptoms of KLS in August 2019.  (*Id.* ¶ 7).
Since then, Student has suffered several-weeks-long KLS episodes and three long-
lasting episodes that were separated by transitional phases of relatively moderate
impairment.  (*Id.* ¶ 8).  During KLS episodes, Student sleeps for weeks on end, waking
daily only to eat and use the restroom.  (*Id.*).  Between the most severe episodes,
Student's behavior and cognitive function often remain impaired, with varying degrees
of extreme anger, depressive mood, disorientation, and fatigue.  (*Id.*).

As a result of his symptoms, Student has missed an extensive amount of
classroom instruction and assignments.  (*Id.*).  Student has had to spend his periods of

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.** SACV 23-00540-MWF (DFMx)          **Date:  January 27, 2025**
Title:       Student, F.C. v. Irvine Unified School District

transition between episodic moments learning the academic subject matters he missed and making up assignments on his own while in a lessened state of wellness.  (*Id.*).  Consequently, Student felt overwhelmed and discouraged and was diagnosed with depression in 2021.  (*Id.*).

District alleges that, in or around February 2020, prior to Student's formal diagnosis of KLS, Parents suspected Student had Epstein Barr Virus/Chronic Fatigue, which prompted District to reduce Student's workload and propose home hospital instruction.  (DRB at 6–7).  With the reduced course load, Student passed all of his eighth-grade classes.  (*Id.* at 7).  Plaintiffs dispute that the accommodations were effective and instead argue that the only reason Student passed his classes was because Parents hired private tutors for him.  (POB at 15–16).

In August 2020, Student matriculated to University High School ("UHS") a public school within District for his ninth-grade school year.  (DRB at 7).  As part of Student's enrollment, Parents completed a health condition information sheet on which they indicated Student did not have any conditions affecting his ability on participate in routine school activities and likewise did not note any viral symptoms, chronic fatigue, or any indication Student may be prone to long bouts of illness.  (*Id.*)

In January 2021, Parents withdrew Student from District and enrolled him at Lutheran High School of Orange County ("Lutheran"), a private school.  (Administrative Record Volume II ("AR II") (Docket No. 37-2) at 635).  Student remained at Lutheran for a short time and was subsequently enrolled at Futures Academy ("Futures"), a private school that Parents believed was fit to address Student's unique education needs.  (Complaint ¶ 10).  Between February 2021 and April 2021, Student experienced a long-lasting KLS episode, and in May 2021, Student was formally diagnosed with KLS.  (Administrative Record Volume I ("AR I") (Docket No. 37-1) at 479).

In April 2021, Parents expressed an interest in re-enrolling Student at UHS.  (*Id.* at 480).  On May 13, 2021, Parents asked that Student be assessed by District for special education eligibility, following his diagnosis of KLS.  (*Id.*).  Student

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  SACV 23-00540-MWF (DFMx)          Date:  January 27, 2025
Title:       Student, F.C. v. Irvine Unified School District

subsequently enrolled at UHS for the 2021–2022 school year.  (DRB at 8).  In
September 2021, when student entered the tenth grade, Student's Individualized
Educational Plan ("IEP") team concluded he was not eligible for IEP because Student
did not meet the eligibility criteria under the IDEA.  (Complaint ¶ 64); (*see also* DRB
at 8).  Instead, the IEP team determined Student was qualified as an individual with a
disability under Section 504 of the Rehabilitation Act of 1973, 29 USC § 794,
("Section 504") and developed an education plan pursuant to Section 504.  (Complaint
¶ 64).

       Parents did not provide consent to the Section 504 plan and on November 29,
2021, sent District a letter indicating their unilateral decision to enroll Student at
Futures and seeking reimbursement for costs related to their decision to do so.  (*Id.* at
18).  District did not respond.  (*Id.*).  On January 8, 2022, Parents withdrew Student
from UHS and enrolled him at Futures.  (*Id.* at 19).

       Parents again enrolled Student at UHS at the beginning of the 2022–2023 school
year.  (AR II at 165).  During the fall semester of the 2022–2023 school year, Student
attended all general education courses at UHS without the support of a Section 504
plan due to Parents' lack of consent to the proposed plan.  (DRB at 8).

       In November 2022, the parties participated in a four-day due process hearing
before ALJ Judith Pasewark (the "Hearing").  In December 2022, ALJ Pasewark
issued a 53-page decision ("Decision" or "ALJ's Decision") in the matter finding for
District on all issues.

       Plaintiffs initiated this action on March 24, 2023, challenging the ALJ's
Decision on all of the issues that Plaintiffs raised at the Hearing—namely, whether
District denied Student a free appropriate public education ("FAPE") by failing to:

   1)  identify Student as a child with a disability, in violation of District's
       "Child Find" obligation;

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  SACV 23-00540-MWF (DFMx)          Date:  January 27, 2025
Title:        Student, F.C. v. Irvine Unified School District

2) conduct appropriate assessments of Student in all areas of suspected
   disability;

3) consider all available information in determining Student's eligibility
   for special education;

4) find Student eligible for special education services and provide a plan
   of supports and services to meet Student's needs due to disability from
   April 2020 through May 26, 2022; and

5)  provide Parents with prior written notice in response to their
    November 29, 2021, 10-day notice of intent to unilaterally place
    Student in a private school and seek reimbursement of tuition
    expenses.

(*Id.* ¶ 89).

## II.    **LEGAL STANDARD**

The Ninth Circuit has summarized the goals and substantive requirements of the
IDEA, as follows:

The IDEA provides federal funds to assist state and local agencies in educating
children with disabilities, but conditions such funding on compliance with
certain goals and procedures. . . . The IDEA's primary purpose is "to assure that
all children with disabilities have available to them . . . a free appropriate public
education which emphasizes special education and related services designed to
meet their unique needs [.]" . . . This purpose is achieved through the
development of an individualized education program ("IEP") for each child with
a disability. . . . The IEP is crafted annually by a team that includes a
representative of the local educational agency, the child's teacher and parents,
and, in appropriate cases, the child. . . . The IEP document must contain:
information regarding the child's present levels of performance; a statement of

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  SACV 23-00540-MWF (DFMx)          Date:  January 27, 2025
Title:        Student, F.C. v. Irvine Unified School District

annual goals and short-term instructional objectives; a statement of the specific
educational services to be provided and the extent to which the child can
participate in regular educational programs; and objective criteria for measuring
the student's progress.

*Ojai Unified Sch. Dist. v. Jackson*, 4 F.3d 1467, 1469 (9th Cir. 1993) (internal citations
omitted).

"In addition to establishing substantive requirements, the IDEA also includes
procedural safeguards which, if violated, may prevent a child from receiving a FAPE."
*Amanda J. ex rel. Annette J. v. Clark Cnty. Sch. Dist.*, 267 F.3d 877, 882 (9th Cir.
2001).  The Ninth Circuit has summarized these procedural safeguards as follows:

[P]arents have the right to 'present complaints with respect to any matter relating
to the identification, evaluation, or educational placement of the child, or the
provision of [a FAPE] to such child.' . . . After making their complaint, the
parents are entitled to 'an impartial due process hearing . . . conducted by [an
administrative agency], as determined by State law or by the State educational
agency.' . . . '[I]f either party is dissatisfied with the state educational agency's
review, they may bring a civil action in state or federal court[.]'

*Id.* (internal citations omitted).

"Not every procedural violation . . . is sufficient to support a finding that the
child in question was denied a FAPE."  *Id.* at 892.  Rather, procedural inadequacies
constitute a denial of a FAPE where they "result in the loss of educational opportunity,
or seriously infringe [a student]'s parents' opportunity to participate in the IEP
formulation process[.]"  *Id.*

A.      **Standard of Review**

In general, under the IDEA, a party aggrieved by the factual findings and
decision rendered after a due process hearing has the right to file a civil action.  *See* 20
U.S.C. § 1415(i)(2)(A).  In such an action challenging an administrative decision, the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  SACV 23-00540-MWF (DFMx)          Date:  January 27, 2025
Title:      Student, F.C. v. Irvine Unified School District

IDEA provides that "the court shall receive the records of the administrative
proceedings, shall hear additional evidence at the request of a party, and, basing its
decision on the preponderance of the evidence, shall grant such relief as the court
determines is appropriate."  *Ojai*, 4 F.3d at 1471. (9th Cir.1993).

A district court reviews the decision of the IDEA hearing officer in an
administrative proceeding under a modified *de novo* standard, giving "due weight" to
the ALJ's conclusions, particularly where it "evinces [their] careful, impartial
consideration of all the evidence and demonstrates [their] sensitivity to the complexity
of the issues presented."  *Id.* at 1476; *see also Union Sch. Dist. v. Smith*, 15 F.3d 1519,
1524 (9th Cir. 1994) ("We give deference to the administrative findings of the Hearing
Officer particularly when, as here, they are thorough and careful.").  This means that
the hearing officer's factual rendering is considered "prima facie correct," and the
district court must explain any disagreement therewith.  This "due weight" standard
thus prevents a district court from imposing its own view of educational policy on the
states.  *Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist., Westchester Cnty. v. Rowley*,
458 U.S. 176, 206, 102 S. Ct. 3034, 73 L. Ed. 2d 690 (1982).  "Complete de novo
review . . . is inappropriate."  *Amanda J.*, 267 F.3d at 887.

The reviewing court in an IDEA case "shall" include "additional evidence"
where it is "non-cumulative, relevant, and otherwise admissible."  *E.M. v. Pajaro
Valley Unified Sch. Dist. Office of Admin. Hearings*, 652 F.3d 999, 1004-05 (9th Cir.
2011) ("[J]udicial review in IDEA cases differs substantially from judicial review of
other agency actions, in which courts generally are confined to the administrative
record and are held to a highly deferential standard of review.") (quoting *Ojai Unified
Sch. Dist.*, 4 F.3d at 1473).  "Additional evidence" includes "evidence concerning
relevant events occurring subsequent to the administrative hearing."  *Id.* at 1004.  The
Ninth Circuit has described the review of IDEA claims as "essentially . . . a bench trial
based on a stipulated record."  *Ojai*, 4 F.3d at 1472.

"The burden of proof in the district court rest[s] with . . . the party challenging
the administrative decision."  *Hood v. Encinitas Union Sch. Dist.*, 486 F.3d 1099, 1103
(9th Cir. 2007).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  SACV 23-00540-MWF (DFMx)          Date:  January 27, 2025
Title:       Student, F.C. v. Irvine Unified School District

## B.    Definition of FAPE

Pursuant to the IDEA, a FAPE is defined as:

special education and related services that (A) have been provided at public
expense, under public supervision and direction, and without charge; (B) meet
the standards of the State educational agency; (C) include an appropriate
preschool, elementary, or secondary school education in the State involved; and
(D) are provided in conformity with the individualized education program
required under section 1414(a)(5) of this title.

20 U.S.C. § 1401(a)(18).

In determining whether a child received a FAPE, the inquiry is twofold:

First, the district court must determine "whether 'the State complied with the
procedures set forth in the Act.'"  *Amanda J.*, 267 F.3d at 890 (quoting *Rowley*, 458
U.S. at 206–07).  The Ninth Circuit has clarified that:

[n]ot every procedural violation . . . is sufficient to support a finding that the
child in question was denied a FAPE.  Technical deviations, for example, will
not render an IEP invalid.  On the other hand, procedural inadequacies that result
in the loss of educational opportunity, or seriously infringe the parents'
opportunity to participate in the IEP formulation process, or that caused a
deprivation of educational benefits, clearly result in the denial of a FAPE.

*Amanda J.*, 267 F.3d at 892 (citations and internal quotations omitted).

Second, the district court must determine, from a substantive standpoint,
"whether 'the individualized educational program developed through the Act's
procedures [was] reasonably calculated to enable the child to receive educational
benefits.'"  *Id.* at 890 (quoting *Rowley*, 458 U.S. at 206-07).  The district court must
focus "primarily on the District's proposed placement, not on the alternative that the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  SACV 23-00540-MWF (DFMx)          Date:  January 27, 2025
Title:      Student, F.C. v. Irvine Unified School District

family preferred." *Gregory K.*, 811 F.2d at 1314.  Even if the parents' preference is
better for the child, the District's placement is still appropriate if it was reasonably
calculated to provide educational benefit to the child.  *See id.*  The adequacy of the
District's placement is not judged in hindsight; rather, it is judged at the time the IEP
was drafted.  *See Adams v. State of Oregon*, 195 F.3d 1141, 1149 (9th Cir. 1999).

## III.  DISCUSSION

### A.   Whether District Failed in its Child Find Duty to Identify Student as a Child with a Disability

The IDEA places an affirmative duty, commonly referred to as the "child find"
duty, on school districts to identify, locate, and assess children who may be in need of
special education and related services.  Cal. Educ. Code § 56301.

The child find duty is triggered when a district has notice or reason to suspect
that a child has a covered disability and may require special education.  *See Timothy O.
v. Paso Robles Unified Sch. Dist.*, 822 F.3d 1105, 1118 (9th Cir. 2016); *see also Dep't
of Educ., State of Hawaii v. Cari Rae S.*, 158 F. Supp. 2d 1190, 1194 (D. Haw. 2001).
The appropriate inquiry is not whether a student qualifies for services, but rather,
whether the student should be referred for an evaluation.  *Cari Rae S.*, 158 F. Supp. 2d
at 1195.  The duty can be triggered by the suspicion of either the parents or the school
district.  *Pasatiempo by Pasatiempo v. Aizawa*, 103 F.3d 796, 801 (9th Cir. 1996).
("[T]here is nothing in either the language or the legislative history of the statutes that
suggests that it is the school district's suspicion or belief alone that activates the
procedural safeguards.").

A district is put on notice of a suspected disability when it becomes aware that
the child has displayed symptoms of that disability.  *Timothy O.*, 822 F.3d at 1119–20.
That notice "may come in the form of expressed parental concerns about a child's
symptoms, . . . expressed opinions by informed professionals, . . . or even by other less
formal indicators, such as the child's behavior in or out of the classroom."  *Id.* at 1121.
The action or inaction of a school district are not evaluated in hindsight; rather, they

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  SACV 23-00540-MWF (DFMx)          Date:  January 27, 2025
Title:      Student, F.C. v. Irvine Unified School District

must be evaluated in light of the information that the district knew or had reason to
know at the time.  *Adams*, 195 F.3d at 1149.  A violation of the child find duty is
considered a procedural violation of the IDEA.  *Pasatiempo*, 103 F.3d at 798.

Plaintiffs argue that District was fully aware of Parents' concerns regarding
Student's ability to access his education "well before the 2019-2020 school year" but
failed to refer him for an assessment.  (POB at 14).  Plaintiffs further argue that District
was aware of Student's ADHD diagnosis since 2017, and Parents provided District
with several updates regarding Student's health and the impact his symptoms were
having on his access to education.  (*Id.*).  Thus, Plaintiffs argue that the concerns of
Parents, coupled with the opinions of multiple of Student's doctors, triggered District's
child find duty.  (*Id.*).

The Court concludes that District timely satisfied its obligations under the child
find duty.  To begin, the ALJ's Decision should be afforded deference.  The analysis
and consideration of the evidence as to this issue is "thorough and careful."  *See Smith*,
15 F.3d at 1524.  Specifically, the ALJ properly weighed and considered the medical
notes and letters submitted by Student's doctors, the email communications between
Parents and school staff, and the several periods during which Student exhibited
symptoms of his illnesses.

Moreover, after evaluating the record, this Court considers the ALJ's
conclusions appropriate.  Student's symptoms perplexed Parents, doctors, and District
staff alike.  Prior to Student's formal diagnosis, Parents and doctors believed and
represented to District that Student was exhibiting symptoms related to a discrete virus
or infection.  (*See e.g.*, AR I at 335).  And the accommodations provided to Student—
namely, the reduced workload and extensions to complete assignments or exams—
appeared sufficient to allow Student to pass his classes.  (*See e.g.*, AR II at 165).
When Parents presented District with the formal diagnosis and requested an IEP,
District timely acted by meeting with Parents to discuss a plan and subsequently
providing an assessment of Student in September 2021.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  SACV 23-00540-MWF (DFMx)          Date:  January 27, 2025
Title:       Student, F.C. v. Irvine Unified School District

The record does not establish that District knew or should have known that Student was a child with a disability.  Although District was aware that Student had ADHD, Parents reported in Student's annual health information forms that his ADHD did not affect his ability to participate in routine school activities and/or that he did not require any special support during the regular school day.  (*See e.g.*, AR I at 370–74).  And, while Student's attendance began to decline during the 2019–2020 school year, Parents and doctors characterized the symptoms as being related to discrete viruses or infections.  (*See e.g.*, *id.* at 417).  In the spring of 2020, Student's doctors requested that District provide Student with home/hospital teaching services or a series of general education accommodations, such as extra time for exams, class schedule modification and homework reduction, and extensions for Student to make up academic requirements over the summer.  (*See id.* at 328, 382).  In these written communications, Student's doctors characterized his diagnosis as long-term sinusitis and chronic fatigue or a complex neurological disorder following his recent viral syndrome.  (*See e.g.*, *id.* at 382, 391).  Because of the COVID-19 pandemic, District transitioned to virtual classes, and Student's teachers informally provided Student with these types of accommodations in their virtual classes.  (*See e.g.*, *id.* at 397).  Student's grades dropped, but no grades were actually assigned due to the distance learning in place at the time.

When Student transitioned to high school for the 2020–2021 school year, Parents reported in the annual health form that Student's medical conditions did not affect his ability to participate in routine school activities and that Parents did not believe he required any special education support.  (*Id.* at 415).  When expressing concerns to teachers over his academic progress, Parents described Student's illness as mononucleosis, and teachers informally provided accommodations for Student to submit late assignments.  (*Id.* at 417).  Although Parents expressed to a UHS counselor that Student required additional support, the counselor responded that Student was performing well academically because, as of January 2021, Student had passed all his classes with As and Bs, except for one class in which he received a D.  (AR II at 165).  Parents subsequently withdrew Student from UHS.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  SACV 23-00540-MWF (DFMx)          Date:  January 27, 2025
Title:       Student, F.C. v. Irvine Unified School District

Even if assuming arguendo District failed in its child find obligation, the
procedural error does not equate to a denial of FAPE because, as discussed below,
Student was not eligible for special education and related services, and therefore, no
denial of FAPE occurred.

Accordingly, the ALJ's Decision is affirmed as to this issue.

**B.    Whether District Failed to Conduct Appropriate Assessments of
Student in All Areas of Suspected Disability**

A school district must assess a child in all areas of suspected disability,
including but not limited to health, vision, hearing, social and emotional status, general
intelligence, and academic performance, before determining whether the child qualifies
for special education services.  (20 U.S.C § 1414(b)(3)(B); 34 C.F.R. § 300.301(a);
Cal. Educ. Code § 56320).  In conducting the assessment, a school district must use a
variety of assessment tools and strategies to gather relevant functional, developmental,
and academic information, including information provided by the parents.  (20 U.S.C.
§ 1414; 34 C.F.R. § 300.304).  The evaluation must be sufficiently comprehensive to
identify all of the child's needs for special education and related services whether or
not commonly linked to the disability category in which the child has been classified.
(20 U.S.C. § 1414; Cal. Educ. Code § 56320).

Plaintiffs argue that District failed to conduct an appropriate assessment because
the Multidisciplinary Assessment Report ("Report") prepared by District did not
include a comprehensive social-emotional/behavior assessment.  (POB at 19).
Although District did conduct a social-emotional assessment, Melissa Hilken,
District's school psychologist, identified that the assessment was conducted for the
specific purpose of evaluating characteristics associated with Student's diagnosis of
ADHD and executive functioning.  (*Id.*).  Because District was aware of Student's
anxiety and depression, Plaintiffs argue that District failed to appropriately assess
Students in all areas of suspected disability.  (*Id.*).  Even though Hilken later provided
rating scales associated with the Behavior Assessment System for Children ("BASC"),

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  SACV 23-00540-MWF (DFMx)          Date:  January 27, 2025
Title:      Student, F.C. v. Irvine Unified School District

the rating scales were not completed prior to the October 2021 IEP meeting and
therefore, were not considered as part of District's multidisciplinary assessment.  (*Id.*).

District responds that the assessment was comprehensive and appropriate.
(DRB at 17).  Specifically, District argues the assessment team carefully selected a set
of assessment tools tailored to evaluate the specific areas of concern, which the team
concluded were "Other Health Impairment ("OHI") and Specific Learning Disability
("SLD")."  (*Id.*).  District further argues that the ALJ properly afforded little weight to
the testimony of Dr. Jeannette Morgan, Student's licensed psychologist, because Dr.
Morgan did not consider the general education accommodations provided to Student
and the concerning biased nature of her opinions, which District argues was unduly
influenced by Plaintiffs' attorney.  (*Id.* 18–19).

Here, the ALJ's Decision is similarly afforded deference.  The ALJ's analysis
and consideration of the relevant evidence as to this issue is very thorough.  The
analysis spans approximately 15 pages of the Decision and provides a careful review of
the relevant documentary evidence and testimony provided by Hilken and Student's
teachers.  Moreover, based on the record, it does not appear that the additional
assessments Plaintiffs seek would actually result in a different outcome as to his
eligibility for a FAPE.  The assessments conducted by Dr. Morgan, which included the
completion of a BASC, paralleled District's assessment results.  (AR II at 268).  None
of Dr. Morgan's assessment results, "including the [BASC], uncovered a pattern of
clinically significant anxiety or depression, at home or at school[,] which required
intervention."  (*Id.*).

The Court concludes District appropriately considered Parents' concerns and
reasonably acted upon them.  Accordingly, the ALJ's Decision is affirmed as to this
issue.

### C.    Whether District Failed to Consider All Available Information in Determining Student's Eligibility for Special Education

Assessors are prohibited from relying on a single measure or assessment as the
sole basis for determining whether a child is eligible for special education or the

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  SACV 23-00540-MWF (DFMx)          Date:  January 27, 2025
Title:        Student, F.C. v. Irvine Unified School District

appropriate content of an eligible student's IEP. (20 U.S.C. § 1414; Cal. Educ. Code §
56320).

Plaintiffs argue that the Report lacked critical information regarding the impact
of Student's health needs because District failed to contact any of Student's doctors or
medical providers to obtain additional relevant information about Student's needs.
(POB at 20).  Plaintiffs further argue that the Report was insufficient because it (1)
included an erroneous statement that Parents had not provided any notes or letters to
address Student's absences and (2) did "not reference Student's psychologist's IVA-2
Standard Score Analysis, which indicated that Student's attention skills were deficient
in both visual and auditory domains." (*Id.*).  Lastly, Plaintiffs argue the ALJ erred in
(1) affording little weight to opinions held by Dr. O'Carroll and (2) ignoring evidence
illustrating the impact of KLS on Student's attendance and performance in academic
courses.  (*Id.* at 21.)

District responds that Plaintiffs' concerns merely express disagreement with the
ALJ's conclusions and weighing of evidence.  (DRB at 21).  The IEP team, and not
Student's doctors, makes the determination as to whether a student meets eligibility
criteria for special education, and the IEP team here properly made that determination
as to Student.  (*Id.* at 20).  Additionally, the ALJ gave appropriate weight to Dr.
O'Carroll's testimony in light of his lack of experience in public education and
nonattendance at Student's IEP meetings.  (*Id.*).  Lastly, the ALJ thoroughly
considered evidence of the implications of KLS on Student's education needs, as
evidenced by her analysis.  (*Id.*).

The ALJ concluded Student did not prove that District failed to consider all
available information when it assessed Student for special education and related
services.  (ALR II at 270).  Specifically, Student did not establish that "further
discussion with his doctors was needed or that they possessed relevant information
regarding Student's academic performance or need for special education and related
services." (*Id.* at 271).  In fact, Dr. Morgan, Student's own expert, "relied on the same
medical information" when drafting her independent assessment.  (*Id.*).  The ALJ

CIVIL MINUTES—GENERAL                                    14

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  SACV 23-00540-MWF (DFMx)          Date:  January 27, 2025
Title:      Student, F.C. v. Irvine Unified School District

instead found that District considered the relevant information, the assessments given, and the conclusions and recommendations based upon the assessment results.  (*Id.*).

Although neither party disputed Dr. O'Carroll's medical expertise nor the information he provided about Student's diagnoses, the ALJ ultimately concluded that Dr. O'Carroll's opinions as to Student's education plan should be afforded little weight because, during his testimony, Dr. O'Carroll acknowledged he "had no experience in public education," "did not educationally assess Student," "maintained only a general awareness of what constituted an IEP," and had "no knowledge of what could be provided in a [Section] 504 Plan."  (*Id.* 271–72).  The ALJ further found Dr. O'Carroll's "use of specific special education jargon in his recommendations, created a doubt that his opinions of Student's educational needs were his own."  (*Id.*  at 272).  And although, conceptually, Dr. O'Carroll's recommendations for an educational program were a good fit for Student, in reality, the type of program he suggested "was a parentally preferred program that could not be developed in a public school setting pursuant to State Law."  (*Id.* at 273).

Lastly, the ALJ acknowledged that the assessment was not conducted while Student was experiencing a KLS episode.  (*Id.*).  However, "[b]y all accounts from Student's doctors and expert testimony, Student was medically unavailable during a KLS episode, and unable to function in an academic setting."  (*Id.*).  Thus, this fact did not invalidate the assessment or Report, but rather "further supported a finding that [District's] multidisciplinary assessment considered all relevant information . . . and accurately captured Student's strengths and weaknesses in the academic setting for those periods of time when Student was cognitively functional and attending school."  (*Id.*).

The Court concludes that the ALJ's reasoning and conclusions as to this issue deserve deference.  The ALJ's analysis as to this issue similarly demonstrates a careful and thorough review of the relevant evidence.  The ALJ referenced the opinions of each doctor or medical professional that provided information to District about Student's health and education needs and carefully weighed the testimony provided by Student's experts at the hearing.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  SACV 23-00540-MWF (DFMx)          Date:  January 27, 2025
Title:       Student, F.C. v. Irvine Unified School District

Additionally, after a review of the record, this Court finds no reason to disagree with the merits of the ALJ's conclusions.  First, Plaintiffs do not explain how or why the analysis that was allegedly omitted from the Report would have led to a different outcome or otherwise resulted in the denial of a FAPE.  Nor do Plaintiffs address the point made by the ALJ that there was insufficient evidence demonstrating that any additional discussion with Student's doctors were needed.  Moreover, the ALJ provided detailed and sensible explanations as to why little weight was afforded to (1) the opinion of Dr. O'Carroll and (2) the fact that the assessment was conducted when Student was not having a KLS episode.

Accordingly, the ALJ's Decision is affirmed as to this issue.

**D.      Whether District Denied Student a FAPE by Failing to Find Student Eligible for Special Education Services and Provide a Plan to Meet Student's Needs**

In relevant part, California law and the IDEA define a "child with a disability" to include a child "(i) with . . . other health impairments, or specific learning disabilities; and (ii) who, by reason thereof, needs special education and related services."  20 U.S.C. § 1401(3); *see also* Cal. Code Regs., Tit. 5, §3030 (substantially similar definition).  When determining if a child needs special education and related services, it is appropriate for courts to determine if a child "is receiving adequate accommodations in the general classroom—and thus is not entitled to special education services[.]"  *Hood*, 486 F.3d at 1106 ([E]ven assuming the existence of a severe discrepancy, the law does not entitle [the child] to special education if [the court] find[s] that her discrepancy can be corrected in the regular classroom.").

Plaintiffs argue that, despite District being in receipt of an abundance of evidence indicating Student's eligibility for special education, District "failed to find Student eligible for special education and make an IEP offer that addressed his unique needs."  (POB at 22).  Plaintiffs reiterate the effectiveness of the one-on-one and flexible-pace instruction Student received at Futures, as evidenced by Student's ability to obtain a 3.74 GPA and Dr. Morgan's conclusion that "Futures was an appropriate

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  SACV 23-00540-MWF (DFMx)          Date:  January 27, 2025
Title:       Student, F.C. v. Irvine Unified School District

placement for Student to address his unique needs." (*Id.* at 23–24). Lastly, Plaintiffs argue that the ALJ disregarded the impact that Student's absences had on his ability to access his education upon his return to school because, even if Student may not necessarily have symptoms of KLS when he is not in an episode, Student still had to overcome a significant learning gap when he returned. (*Id.* at 24). Accordingly, "the numerous requests by Parents, Dr. O'Carroll, and Dr. Morgan to provide Student with an IEP were not to ensure that Student could be given some form of instruction while he was" undergoing a KLS episode but rather, to ensure Student had "additional supports and an appropriate educational program . . . once his KLS episode had concluded." (*Id.* at 25).

The ALJ concluded "that Student did not need special education or related services to access his education." (ALR II at 275). Rather, accommodations and supports within the general education curriculum could enable Student to access his education while remaining in the less-restrictive general education environment. (*Id.*).

First, the ALJ found that District appropriately determined Student did not meet eligibility requirements for a "specific learning disability" because Student's assessment results confirmed that "Student did not demonstrate significant cognitive or academic weaknesses in any area." (*Id.* at 277). Notably, Dr. Morgan agreed that Student did not meet the eligibility requirements under this category. (*Id.*).

Second, the ALJ found District appropriately determined Student did not qualify for special education under the category of "other health impairments." (*Id.* at 278). Although Student was diagnosed with ADHD, the interviews and assessments showed that Student did not struggle with limited alertness or hypervigilance in the classroom. (*Id.*). Moreover, it was clear, and all parties agreed, that Student could not receive or benefit from special education or related services during a KLS episode. (*Id.* at 279). "As a result, the implementation of an IEP could only take place once Student returned to school." (*Id.*). Once Student returned to school, however, he "understood the curriculum, performed at grade level, made progress in his studies, and required nothing more than accommodations to catch up with his peers." (*Id.*).

---

**CIVIL MINUTES—GENERAL**                                                    **17**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  SACV 23-00540-MWF (DFMx)          Date:  January 27, 2025
Title:      Student, F.C. v. Irvine Unified School District

The ALJ noted that Dr. Morgan believed District "overlooked the impact gap a
KLS episode had on Student", but ultimately, the ALJ gave little weight to Dr.
Morgan's testimony.   (*Id.* at 280).  Dr. Morgan "did not review the accommodations
proposed by [District,]" and "her testimony was clouded by the appearance of bias as a
witness for Student." (*Id.*).  When Dr. Morgan emailed Student's counsel her draft
assessment, counsel responded by suggesting that Student's ADHD "was easier to
support than a primary concern regarding KLS", and at the hearing, Dr. Morgan
"emphasized the areas discussed in the email." (*Id.* at 281).  Moreover, Dr. Morgan
retained her opinion that Student needed an IEP, while "continuing to recommend
Parent[s'] preferred education setting at Futures", even though "Dr. Morgan knew
Futures provided no special education and related services, had no special education
teachers, and would not implement an IEP." (*Id.*).

Even if Student had a qualifying health condition, the ALJ concluded Student
"did not meet the second requirement of the definition which required Student be
unable to access the curriculum without specialized academic instruction." (*Id.*).
Instead, a Section 504 plan would be more apt to develop accommodations to support
Student and fill any gaps after prolonged absences due to a KLS episode. (*Id.* at 285).
The problem with Parents' proposed stop-and-start plan, which would in essence allow
Student to pause and restart his instruction whenever necessary, is that pursuant to
California law, a public school has a finite number of days to complete required
curriculum for graduation. (*See* Cal. Educ. Code §§ 37200, et seq.).  Accordingly,
UHS counselors provided Parents with options, such as allowing Student to make up
classes independently after school, attending summer school, and providing additional
peer tutoring to allow Student to catch up within the defined statutory requirements.
(ALR II at 286).

Moreover, despite Parents and Dr. Morgan's insistence that Futures provided an
effective education plan, Futures, as a private school, has more flexibility to determine
its schedule. (*Id.* at 287).  But even Futures does not afford students complete
flexibility over their schedules by allowing them to pause their classes indefinitely.
(*Id.*).  Instead, during Student's enrollment at Futures, "Futures did not modify class
content and only provided individualized teaching one hour per week per class." (*Id.*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  SACV 23-00540-MWF (DFMx)          Date:  January 27, 2025
Title:       Student, F.C. v. Irvine Unified School District

at 289).  Accordingly, the ALJ reasoned that what District "could offer Student within the general education program was substantially similar to what Student received at Futures."  (*Id.*).

Ultimately, the ALJ noted that, "the question was not whether Student would benefit from one-to-one teaching or pausing of the curriculum in order to close the gap created by KLS. Certainly, Student would benefit from those services. But benefiting from such services was not criteria for determining eligibility for special education." (*Id.* at 289).  Instead, Student "required accommodations and other supports available through the general education program."  (*Id.*).

The Court agrees with the ALJ's conclusions as to this issue and affords the Decision great deference.  Here, again, the ALJ's analysis and review of the relevant evidence is careful and thorough.  For example, the ALJ meticulously discussed the steps District took in evaluating Student under each of the above categories and adequately explained why they agreed with the ultimate determination made by District.  Moreover, the ALJ described the relevant testimony and explained why some testimony was given more weight than others.

Plaintiffs' arguments mostly express a disagreement with the ALJ's overall conclusion that Student does not need an IEP and would instead benefit from modifications made pursuant to a Section 504 plan.  However, Plaintiffs do not discuss the statutory limitations placed on District to create the stop-and-start program nor the ALJ's finding that, Parents' preferred education plan—the plan Student received at Futures—is substantially similar to the accommodations District has offered to provide.  Lastly, Plaintiffs do not point to evidence in the record that establishes Student required a special education plan or related services.  Rather, Plaintiffs reiterate their belief that the ALJ insufficiently considered Dr. Morgan's testimony and specifically, the impact that an absence had on Student's learning gap.

Accordingly, the ALJ's Decision is affirmed as to this issue.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.** SACV 23-00540-MWF (DFMx)          **Date:  January 27, 2025**
Title:        Student, F.C. v. Irvine Unified School District

### E.    **Whether District denied Student a FAPE by Failing to Provide Parents Prior Written Notice**

A school district must provide prior written notice ("PWN") to the parents of a child whenever the school district "(A) proposes to initiate or change; or (B) refuses to initiate or change, the identification, evaluation, or educational placement of the child, or the provision of a" FAPE to the child.  20 U.S.C. § 1415(b)(3); 34 C.F.R. § 300.503.

Plaintiffs argue that District denied Student a FAPE because District did not send Parents a PWN after Parents gave 10-day notice of their intent to place Student at Futures and seek reimbursement from District for the cost of doing so.  (POB at 26).  Because District failed to respond at all, Parents had to delay placing Student at Futures while awaiting information about District's decision to approve or deny funding for Student's placement at Futures.  (*Id.*).

The Court affirms the ALJ's Decision as to this issue.  Plaintiffs do not explain why or how the November 29, 2021, letter, which expresses Parents' unilateral intent to place Student in a non-public school and seek reimbursement of tuition expenses, falls under one of the two categories that would have triggered District's requirement to provide PWN.  Student's assessment took place in September 2021, and District made the determination of Student's ineligibility in October 2021.  (AR II at 290).  Parents then sent District the letter on November 29, 2021.  (*Id.*).  Because District had already made a determination of ineligibility, District was not required to provide PWN in response Parents' letter.  (*Id.*).

Accordingly, the ALJ's Decision is affirmed as to this issue.

### IV.    **CONCLUSION**

The ALJ's Decision **AFFIRMED**.  This Order shall constitute notice of entry of judgment pursuant to Federal Rule of Civil Procedure 58.  Pursuant to Local Rule 58-

Case 8:23-cv-00540-MWF-DFM    Document 68    Filed 01/27/25    Page 21 of 21    Page ID
#:2139

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.** **SACV 23-00540-MWF (DFMx)**        **Date:  January 27, 2025**
Title:        Student, F.C. v. Irvine Unified School District

6, the Court **ORDERS** the Clerk to treat this order, and its entry on the docket, as an
entry of judgment.

IT IS SO ORDERED.